FILED
 2014 May-22 AM 11:55
U.S. DISTRICT COURT
    N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| D.B.C., as mother and next friend of M.A.M., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | 2:13-CV-00377-LSC |
| JEFFREY G. PIERSON, et al., | ) ) ) | |
| Defendants. | ) | |
| T.A.H., as mother and next friend of S.L.H., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | 2:13-CV-00378-LSC |
| JEFFREY G. PIERSON, et al., | ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OF OPINION

Before the Court is Defendant State Farm Fire & Casualty Company's ("State Farm") motion for summary judgment on all claims against it in these two consolidated cases. (Doc. 21 in 13-377; Doc. 22 in 13-378.) Plaintiffs T.A.H. and S.L.H., as representatives of their daughters, who were minors at the time of the suit (collectively, "Plaintiffs"), brought this action to compel State Farm to pay state court

judgments that Plaintiffs previously obtained against Anita Pierson, Jeffrey ("Jeff") Pierson and BSM Publication (collectively, "the Piersons"). For the reasons stated below, summary judgment is due to be GRANTED.

I. Factual Background

Jeff Pierson owned and operated BSM Publication, Inc., which ostensibly operated as a modeling agency. Jeff Pierson was the photographer. Anita Pierson worked with the clothing and makeup of the models, but was not an employee or owner of BSM. Jeff and Anita Pierson had a homeowners' insurance policy with State Farm during the relevant period. In addition, "Jeff Pierson d/b/a Beautiful Super Models" was the named insured on a business insurance policy issued by State Farm.

Both Plaintiffs' daughters became clients of BSM, which photographed Plaintiffs' daughters separately in several sessions between 2003 and 2005. The clothing worn by Plaintiffs' daughters became skimpier as the sessions continued, and the poses in which they were placed became more provocative. Plaintiffs' state court suits[1] alleged that the Piersons engaged in negligent and wanton conduct by photographing and publishing on the Internet sexually explicit images of Plaintiffs' daughters.

---

[1] Plaintiffs also sued a company named Webe Web and two people associated with it, but none of those entities are involved in the present suit.

Jeff Pierson was also charged with violating federal child pornography statutes. *See* 18 U.S.C. §§ 2252A(b)(1); 2252A(a)(1). Pierson pled guilty to these charges and was sentenced to prison. In his plea, Pierson admitted to knowingly distributing child pornography and to conspiring to do so. Plaintiffs' lawsuits were stayed during the pendency of the criminal proceedings. In 2012, both Plaintiffs filed for summary judgment and obtained significant damage awards in their state-court suits.

In addition to humiliation and other reputational damage, Plaintiffs' daughters were diagnosed with post-traumatic stress disorder, anxiety, and depression; the psychologist who made these diagnoses did not note any physical injuries. One child, S.L.H., complained of headaches, nausea, and lack of sleep, while the other, M.A.M., complained of throwing up and cutting herself. The summary judgments issued by the state court in Plaintiffs' suits included language stating that the minors were physically and mentally injured by the Piersons.

The two insurance policies at issue here had several terms that will be important to the resolution of this case. The basic liability provision of the business insurance policy states that it applies "to bodily injury or property damage caused by an occurrence . . . ." (Doc. 1-4 at 25.) The policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result(s) in bodily injury or property damage." (*Id.* at 37.) No

property damage has been alleged here, and the policy defines bodily injury as "physical injury, sickness, or disease to a person, including required care . . . ." (*Id.* at 48.) The definition goes on to state that bodily injury does not include "emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person." (*Id.*) The business policy also contains an exclusion that states that coverage does not apply to bodily injury or property damages "expected or intended from the standpoint of the insured" or to "any person or property which is the result of willful and malicious acts of the insured." (*Id.* at 21.)

The Piersons' homeowners' policy contained similar definitions of "occurrence" and "bodily injury" found in the business policy.[2] (Doc. 1-3 at 11-12.) It also contained a similar exclusion for injury or damage "which is either expected or intended by the insured" or "which is the result of willful and malicious acts of the insured." (*Id.* at 12.) The homeowners' policy also included an additional exclusion stating that the policy does "not cover loss arising out of business pursuits . . . ." (*Id.* at 15.) Both policies also contained provisions that required the insureds to notify State

---

[2] Though the format of the two policies is not identical, the wording is similar enough to be treated the same by the Court. For example, the definition of occurrence in the homeowners' policy is "an accident, including exposure to conditions, which results in a) bodily injury or b) property damage." (Doc. 1-3 at 12.)

Farm of an occurrence within a reasonable time. The underlying events occurred between 2003 and 2005, but the Piersons did not notify State Farm until after Plaintiffs sued them in 2007.

## II. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing

that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

III. Discussion

State Farm's duties under the policy include the duty to defend the Piersons against covered actions and to indemnify them against judgments that proceed from those actions. Because the state-court proceeding has already ended, any issue surrounding the duty to defend is moot, and the only issue is whether State Farm must indemnify the Piersons by paying the judgment. *See Ajdarodini v. State Auto Mut. Ins. Co.*, 628 So. 2d 312, 313 (Ala. 1993).

State Farm is entitled to summary judgment if it can show that no reasonable jury could find that the insurance policies at issue provided coverage for the Piersons' photography of Plaintiffs daughters and the distribution thereof. In order for coverage to exist under either policy, the Piersons' actions must constitute an occurrence. An occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result(s) in bodily injury or property damage." (Doc. 1-4 at 37.) If there was no occurrence, coverage does not

exist. In addition, even if there was an occurrence, coverage cannot exist if an exclusion in the policy applies, or if the Piersons' failed to comply with the notice provisions.

A. There was no occurrence under the policy.

The policies' definition of occurrence begins by requiring an accident. The word accident is undefined in the policy. The Alabama Supreme Court, however, has defined accident in the context of insurance policies as "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated." *St. Paul Fire & Marine Ins. Co. v. Christiansen Marine, Inc*, 893 So. 2d 1124, 1137 (Ala. 2004) (quoting Black's Law Dictionary 15 (7th ed. 1999)). Where the insured "may have made a mistake of fact and/or an error in judgment, but it all times acted in a deliberate and purposeful manner," no accident has occurred. *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1013 (Ala. 2005) (quoting *Mindis Metals, Inc. v. Transportation Ins. Co.*, 209 F.3d 1296, 1301 (11th Cir. 2000).

In the present case, the Piersons "acted in a deliberate and purposeful manner" in photographing Plaintiffs' daughters. *Hartford*, 928 So. 2d at 1013. They made a conscious decision, memorialized in a contract no less, to set up photo shoots and distribute the resulting photographs. In addition, Jeffrey Pierson pleaded guilty to

violating a statute that included as an element his knowledge that the photographs were pornographic. Nonetheless, even if the Piersons "may have made a mistake" as to whether the photographs were pornographic, every action they took was done intentionally. *Id.* Plaintiffs present no evidence by which a reasonable jury could find the Piersons' actions to be anything but deliberate. Therefore, the taking and distribution of the photographs cannot be considered an accident under Alabama law.

The policies' definition of occurrence, however, goes on after the word accident, "including continuous or repeated exposure" to a harmful condition. Plaintiffs argue that their daughters' numerous photographs by the Piersons constituted repeated exposure to such a condition. Alabama law counsels for a broad interpretation of this prong of the definition of occurrence. *See United States Fid. & Guar. Co. v. Bonitz Insulation Co. of Ala.*, 424 So. 2d 569, 573 (Ala. 1982) (holding that a roof leak caused "continuous or repeated exposure to conditions"). The policy is at least ambiguous as to whether the continuous or related exposure must be accidental, or whether it creates a category of occurrence outside of accidents. Such ambiguities must be resolved in favor of the insured. *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 692 (Ala. 2001). Therefore, Plaintiff has raised a jury question as to whether the taking of explicit photos and posting them on the Internet qualifies as repeated or continuous exposure to a dangerous condition.

In order for the Piersons' actions to constitute an occurrence, however, another element of the definition must also be met. The exposure to a dangerous condition must cause bodily injury. "Bodily injury" is defined in the policy as "physical, injury, sickness, or disease to a person," and the definition "does not include emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person." (Doc. 1-4 at 25; *see also* Doc. 1-3 at 11-12.) It is undisputed that neither child experienced bodily injury during the photography sessions. Although Plaintiffs claim that their daughters suffered headaches, nausea, and lack of sleep as a result of the taking and distribution of the pictures, their complaints in state court did not specifically seek damages arising "out of actual physical injury to some person." (Doc. 1-4 at 25.) Rather, Plaintiffs listed several categories of damages including "extreme embarrassment and emotional trauma," "extreme emotional distress and mental anguish," and past and future treatment expenses for these problems. (Doc. 21-13 at 40; Doc. 21-9 at 21); *see Gunnin v. State Farm & Cas. Co.*, 508 F. Supp. 2d 998, 1002-1003 (M.D. Ala. 2007) (finding that the complaint did not allege bodily injury in similar circumstances).

Despite the fact that the complaints did not specifically allege physical injury, the judgments entered by the trial courts stated that Plaintiffs' daughters had suffered

both mental and physical injury.[3] (Doc. 1-1 in 13-377 at 18-19; Doc. 1-1 in 13-378 at 12-13.) The state courts thus found that physical injuries existed, but those courts made no rulings on whether such injuries arose out of actual physical injury to some person. Plaintiffs' daughters' insomnia, nausea, headaches, and self-mutilation were, according to their own testimony, caused by the embarrassment and humiliation they felt as a result of the distribution of the pictures and the reaction of their classmates. Thus the mental injury caused the physical injury, rather than the reverse.

There is no indication in the policy definition of bodily injury that it covers physical injuries that arise out of mental injuries, without there first being some actual physical injury. The Alabama Supreme Court has not addressed whether the bodily injury policy term at issue covers physical injury or illness that arises out of mental injury. Several other courts, however, have interpreted the identical language at issue in this case and found that coverage does not exist where the physical injury was caused by a mental injury. *See, e.g., Geraci v. Conte*, 2000 WL 1739294 at *6 (8th Ct. App. Ohio, 2000); *Pratchenko v. Fuller*, 1997 WL 426968 at *4 (Wis. Ct. App. 1997);

---

[3] State Farm could only be liable for the portion of the damages covered by the policy, which does not include pure mental or reputational damages. *See American States Ins. Co. v. Cooper*, 518 So. 2d 708, 710 (Ala. 1987) (finding no duty to indemnify for damages caused by uncovered intentional misrepresentations, even where such duty existed regarding covered negligent misrepresentations). Because the Court finds no coverage in this case, it need not attempt to parse the damages.

*Nationwide Mut. Ins. Co. v. Pasiak*, 2012 WL 310772 at *8 (Conn. Super. 2012). All of the claimed bodily illnesses and injuries in this care are physical manifestations of emotional distress. *See State Farm Mut. Auto. Ins. Co. v. D.L.B. ex rel. Brake*, 881 N.E.2d 665, 666 (Ind. 2008). Because the physical manifestations of emotional distress are not bodily injuries under the policies, Plaintiffs have presented no evidence that the exposure caused bodily injury. Therefore, no occurrence happened under the policy, and summary judgment for the Defendant in this case is proper.

B. Coverage is barred by the policy exclusions.

This conclusion is bolstered by examining the policy exclusions. The policies exclude both injuries that are "either expected or intended by the insured" and those that are "the result of willful and malicious acts of the insured." (Doc. 1-3 at 12; Doc. 1-4 at 21.) Under Alabama law, State Farm bears the burden of demonstrating that these exclusions apply. *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 12 (Ala. 2001). The exclusion for injuries that are "expected or intended by the insured" is normally interpreted on a subjective basis, with the Court examining whether the insured has "the specific intent to cause bodily injury to another." *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Dyer*, 454 So. 2d 921, 925 (Ala. 1984). The Piersons have testified that they saw nothing wrong with the photos, which might constitute substantial evidence that they lacked the subjective intent to harm Plaintiffs' daughters. However, the

Alabama Supreme Court has rejected this subjective standard in cases of sexual abuse of minors, choosing instead to infer the intent of harm from the act of sexual abuse. *State Farm Fire and Cas. Co. v. Davis*, 612 So. 2d 458, 464 (Ala. 1993).

No Alabama court interpreting the "expected or intended" exclusion has determined whether non-physical sexual exploitation should be subject to the inferred intent rule. The *Davis* Court, however, based its adoption of this rule, at least in part, on the egregious and outrageous nature of the criminal acts committed by the insured. *Id.* at 465. For this Court at least, the production and distribution of child pornography meets a level of outrage that should allow an inference of intent to harm the child. Jeff Pierson's guilty plea meant that he admitted knowing that the pictures he produced and distributed were pornographic in nature. 18 U.S.C. § 2252A.

The *Davis* Court also examined the approaches taken by other states in interpreting insurance policies' intentional act exclusions in the context of sexual abuse of minors. 612 So. 2d at 463 (noting that inferred intent represented "the majority rule"). Though perfectly analogous cases are rare, similar recourse to the decisions of other states can be helpful in this case. At least two states have directly ruled that the intent to harm required by exclusions in insurance policies can be inferred in cases of non-physical sexual exploitation of minors. *TBH ex rel Howard v. Meyer*, 716 A.2d 31, 33-34 (Vt. 1998); *Amer. Econ. Ins. Co. v. Estate of Wilker*, 977 P.2d

677 (Wash. Ct. App. 1999); *see also State v. Burda*, 2009 WL 1181349 (Tenn. Crim. App. May 4, 2009) (discussing *TBH* in the course of applying enhanced sentence to crime of non-physical sexual exploitation).[4] The Supreme Court of Vermont explained its ruling persuasively:

> "[b]ecause of our enhanced concern for the well-being of Vermont's children, in determining the applicability of the inferred intent rule, we did not and will not render a cramped definition of sexually abusive acts so as to include only those acts which involve physical sexual contact with a minor victim."

*TBH*, 716 A.2d at 34 (citing, *inter alia*, Black's Law Dictionary, 217 (5th ed. 1979) (defining "child abuse" as "[a]ny form of cruelty to a child's physical, moral, or mental well-being")). Like those who engage in physical sexual abuse, child pornographers should not be allowed to subsidize such conduct "at the ultimate expense of other insureds . . . ." *Horace Mann Ins. Co. v. Fore*, 785 F. Supp. 947, 956 (M.D. Ala. 1992). Thus, following the inferred intent rule, the injuries to Plaintiffs' daughters were expected and intended by the insured, and are thus excluded from coverage by the policy.

Finally, the conclusion that coverage does not exist is further strengthened by the fact that the "willful and malicious acts" exclusion also applies to relieve State

---

[4] In addition, Nevada has relied in part on the inferred intent rule to exclude coverage for parents' failure to prevent sexual abuse by their adult child, where there was no allegation of physical abuse by the parent. *Fire Ins. Exch. v. Cornell*, 90 P.3d 978 (Nev. 2004).

Farm of the duty to indemnify in this case. Unlike the "intended acts" exclusion, an objective standard should be used to evaluate whether the alleged acts are willful and malicious. *See Davis*, 612 So. 2d at 465 (noting that, in addition to the inferred intent decision described above, coverage would also be precluded under "the objective standard" of the willful and malicious acts exclusion). Under this standard, the insured need not intend the injury if the acts complained of are willful and malicious. *McCauley v. Estes*, 726 So. 2d 719, 722 (Ala. Civ. App. 1998). In *McCauley*, the Court of Appeals upheld summary judgment for the insurer on this exclusion, where the insured secretly videotaped a woman in the restroom of his home. *Id.* at 721-22. In doing so, it relied in part upon a definition of willful borrowed (via the Louisiana Court of Appeal) from William Prosser's *Law of Torts*, describing willful conduct as when the actor "has intentionally done an act of unreasonable character in reckless disregard of the risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Id.* at 722 (citing *Jeansonne v. Detillier*, 656 So. 2d 689, 692 (La. App. 1994)).

As noted above, all of the Piersons' acts in taking and distributing the pictures were intentional. From an objective standpoint, they were clearly unreasonable in character and done at great and obvious risk to Plaintiffs' daughters. Even if the Piersons did not intend to harm the Plaintiffs, and whether or not they understood the

consequences of their actions, they acted with total indifference toward the impact of their illicit business pursuits on the young girls involved. Under Alabama law, that means they acted willfully and maliciously. *McCauley*, 726 So. 2d at 722; *see also State Farm Fire & Cas. Co. v. Burkhardt*, 96 F. Supp. 2d 1343, 1347 (M.D. Ala. 2000) (applying Alabama law to enforce willful and malicious acts exclusion in sexual misconduct case). Because the policy excludes such acts, no coverage exists and State Farm cannot be liable to indemnify the Piersons in this case. Thus, summary judgment is due to be granted.

IV. Conclusion

No physical injury occurred under the policy definition. Therefore, the complained of actions by the insureds did not constitute an occurrence. Without an occurrence, no coverage exists. Furthermore, the exclusions for expected and intended injuries and for willful and malicious acts serve to bar State Farm's liability in this case. Because no reasonable jury could find that the acts complained of are covered by the policy, summary judgment is due to be granted A separate order will be entered.

Done this 22nd day of May 2014.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

174310